UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
GEORGE A. MAIB, et al.         )
                               )
        Plaintiffs,            )
                               )
        v.                     )    Civil Action No. 09-1261 (RWR)
                               )
FEDERAL DEPOSIT INSURANCE      )
CORPORATION,                   )
                               )
        Defendant.             )
_____)
```

<u>MEMORANDUM OPINION</u>

Plaintiffs George Maib, Robyn Maib, and Ocean Concrete, Inc. bring this action against the Federal Deposit Insurance Corporation ("FDIC") as the receiver of the Columbian Bank & Trust Company ("CB&T"), alleging four causes of action based upon disputes over a loan between the plaintiffs and CB&T. The FDIC has moved to dismiss the complaint. Because the complaint fails to state a claim for which relief can be granted, the motion will be granted.

<u>BACKGROUND</u>

George Maib is the principal officer, director, and shareholder of Ocean Concrete. (Compl. ¶ 5.) The FDIC is the receiver for the failed institution formerly known as CB&T. (<u>Id.</u> ¶ 6.) Before CB&T failed, it approved a $2.7 million loan for the Maibs to fund Ocean Concrete and to acquire real property in Florida for the operation of Ocean Concrete. (<u>Id.</u> ¶ 7; Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") at 3, Ex. 1.)

Under the loan agreement, CB&T agreed to make the loan "in multiple advances as the [Maibs] complete[d] the development of the Property." (Def.'s Mem. Ex. 1 ¶ 3.1; see Compl. ¶ 9.) CB&T agreed to make an initial advance of $1,389,690.00 to the Maibs, and "the balance of the Loan [would] be advanced as work on the Property [was] completed and inspected in accordance with procedures developed by [CB&T]." (Def.'s Mem. Ex. 1 ¶ 3.1.) The plaintiffs assert, though, that the loan agreement required CB&T to advance sums "upon request" of the plaintiffs (Compl. ¶ 9), and they complain that CB&T began conditioning the loan distributions upon the plaintiffs classifying the proceeds in a particular manner over the plaintiffs' objections. (Compl. ¶ 10.)

George Maib informed CB&T that he wanted to use $300,000 of the loan proceeds to acquire a residential dwelling. CB&T responded that he would have to take out a new loan carrying $169,000 in closing costs. CB&T also allegedly threatened the plaintiffs with default and foreclosure, and forced the plaintiffs to pay a broker's fee of $25,000 for this new loan for $300,000, which, according to the plaintiffs, "never came into existence." (Id. ¶¶ 11-12.)

According to the plaintiffs, CB&T subsequently interfered with the business decisions and operations of the plaintiffs' business by refusing to fund requests for distributions unless

conditions CB&T dictated were fulfilled, including refusing to distribute funds for vehicle and equipment acquisition and leasing unless the plaintiffs used a vendor selected by CB&T. The plaintiffs allege that CB&T's failure to distribute the proceeds of the loan caused "checks to bounce" and damaged their "credit-worthiness and business reputations[.]" (<u>Id.</u> ¶¶ 13-14.) The plaintiffs state that they engaged in discussions with a separate lender who was willing to take over the CB&T loans at their maturity, if CB&T cooperated. However, CB&T did not cooperate with the plaintiffs and the separate lender, and the opportunity with the separate lender ended. (<u>Id.</u> ¶¶ 16-17.)

The plaintiffs filed this four-count complaint alleging Florida common law claims[1] of breach of contract (Count I), tortious interference with business relationships (Count II), "disparagement of credit" (Count III), and fraud (Count IV). The FDIC has moved under Federal Rule of Civil Procedure 12(b)(6)[2] to

_____

[1] The loan agreement specifically stated that it and "all matters relating to the Loan shall be governed by and construed in accordance with Florida law[.]" (Def.'s Mem., Ex. 1 ¶ 8.1.)

[2] The FDIC also moves under Rule 12(b)(1) to dismiss claims by Robyn Maib and Ocean Concrete arguing that their failure to first file a claim with the receiver deprives the court of subject matter jurisdiction. "Ordinarily, a federal court must first determine that it has jurisdiction over a case before ruling on its merits." <u>Shafi v. Palestinian Auth.</u>, 686 F. Supp. 2d 23, 25 (D.D.C. 2010) (citing <u>Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.</u>, 549 U.S. 422, 430-31 (2007) and <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 94 (1998)). However, when a case can be resolved otherwise in favor of the party raising the jurisdictional issue, "it is not

dismiss the complaint, arguing that the complaint fails to state any viable claim for relief. (Def.'s Mem. at 2.) The plaintiffs oppose.

DISCUSSION

"A complaint can be dismissed under Rule 12(b)(6) when a plaintiff fails to state a claim upon which relief can be granted." Peavey v. Holder, 657 F. Supp. 2d 180, 185 (D.D.C. 2009) (citing Fed. R. Civ. P. 12(b)(6)). "A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint." Smith-Thompson v. Dist. of Columbia, 657 F. Supp. 2d 123, 129 (D.D.C. 2009).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, acceptable as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007)). The complaint must be construed in the light most favorable to the plaintiff and "the court must assume the truth of all well-pleaded allegations." Warren v. Dist. of Columbia, 353 F.3d

_____

necessary to grapple first with difficult jurisdictional questions." Shafi, 686 F. Supp. 2d at 25 (citing Norton v. Mathews, 427 U.S. 524, 532 (1976) and Feinstein v. Resolution Trust Corp., 942 F.2d 34, 40 (1st Cir. 1991)). Because the complaint can be dismissed for failure to state a claim, the jurisdictional challenges need not be addressed.

36, 39 (D.C. Cir. 2004). In deciding a motion brought under Rule 12(b)(6), a court does not consider matters outside the pleadings, but a court may consider on a motion to dismiss "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," Gustave-Schmidt v. Chao, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), or "documents 'upon which the plaintiff's complaint necessarily relies' even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss," such as the loan agreement here. Hinton v. Corr. Corp. of Am., 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (quoting Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998)). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" Twombly, 550 U.S. at 555. However, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

I.   BREACH OF CONTRACT

The FDIC moves to dismiss the breach of contract claim in Count I for failure to state a claim because the complaint does not specify the provision of the contract that CB&T breached or identify any specific conduct by CB&T that breached the agreement. Indeed, says the FDIC, the agreement specifically

allowed CB&T to condition loan advances on the progress of the development of the underlying property, and covered purchase of that property but not a residence. (Def.'s Mem. at 4, 9.) The plaintiffs oppose, arguing that the complaint "alleged 20 paragraphs of jurisdictional and general factual allegations and the requisite elements in paragraphs 22-24[.]" (Pls.' Opp'n at 2.) Paragraphs 22 through 24 of the complaint state:

> 22. This is an action for Breach of Contract, that contract being the loan documents attached hereto as Exhibit C.
> 23. The conduct of [CB&T] as above described herein, constitutes a breach of the loan documents which formed a contract between the Plaintiffs . . . and [CB&T].
> 24. As a result of the above-described conduct of [CB&T], the plaintiffs . . . have suffered damages in excess of Seventy Five Thousand Dollars ($75,0000) together with attorneys' fees which they have incurred and will continue to incur.

(Compl. ¶¶ 22-24.)

Under Florida law, the elements of a breach of contract claim are (1) a valid contract; (2) a material breach; and (3) damages. Sierra Equity Group, Inc. v. White Oak Equity, LLC, 650 F. Supp. 2d 1213, 1228 (S.D. Fla. 2009) (citing Beck v. Lazard Freres & Co., LLC, 175 F. 3d 913, 914 (11th Cir. 1999) and Miller v. Nifakos, 655 So. 2d 192, 193 (Fla. Dist. Ct. App. 1995)). As the FDIC points out, the complaint does not specify what provision of the loan agreement CB&T breached. The plaintiffs do not identify any provision requiring CB&T to make distributions to the plaintiffs "upon request." What the loan

agreement specifically states is that after CB&T made an initial distribution, "the balance of the Loan shall be advanced as work on the Property is completed and inspected in accordance with procedures developed by [CB&T]." (Def.'s Mem., Ex. 1 ¶ 3.1.) Moreover, plaintiffs identify no language in the agreement permitting them to use the loan proceeds to acquire a residence, nor is any such language apparent upon reading the agreement. The complaint fails to contain sufficient factual material to show that the breach of contract claim is plausible on its face. To the contrary, its claim for breach of contract is contradicted by the plain language on the face of the contract documents. See, e.g., Ihebereme v. Capital One, N.A., Civil Action No. 10-1106 (ESH), 2010 WL 3118815, at *4 (D.D.C. August 9, 2010) (dismissing breach of contract claim where the complaint failed to "put the defendant on notice of which terms [of the alleged contract] it allegedly breached," and where the court reviewed the contract and could not find a provision that imposed the duty upon which the plaintiff's claim was based).

## II.  TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

The FDIC moves to dismiss the claim for tortious interference with business relationships that existed between the plaintiffs and "companies and individuals with which it attempted to do business" asserted in Count II because the complaint fails to allege a specific relationship with a particular party, and

fails to allege that CB&T knew of any specific prospective
business relationships between the plaintiffs and other
additional parties.  (Def.'s Mem. at 9-11.)  The plaintiffs
oppose, arguing that the FDIC "curiously does not deny" that the
plaintiffs had a specific relationship with external parties, and
arguing that the "loan documents attached to the complaint
demonstrating such relationship speak for themselves."  (Pls.'
Opp'n at 3.)

Under Florida law, the elements of a claim of tortious
interference with business relations are "1) the existence of a
business relationship, not necessarily evidenced by an
enforceable contract; 2) knowledge of the relationship on the
part of the defendant; 3) an intentional and unjustified
interference with that relationship by the defendant;
and 4) damage to the plaintiff as a result of the breach of the
relationship."  Magre v. Charles, 729 So. 2d 440, 443-44 (Fla.
Dist. Ct. App. 1999)).

Again, the complaint lacks sufficient facts to support the
plaintiffs' claim.  To the extent that the complaint is alleging
that CB&T interfered with the plaintiffs' relationship with the
other lender, it does not allege any facts that would show that
CB&T had knowledge of that relationship.  To the extent that the
complaint alleges that CB&T interfered with the plaintiffs'
relationship with CB&T itself, "[u]nder Florida law, a claim for

tortious interference cannot lie where the alleged interference
is directed at a business relationship to which the defendant is
a party.  <u>Romika-USA, Inc. v. HSBC Bank USA, N.A.</u>, 514 F. Supp.
2d 1334, 1338 (S.D. Fla. 2007) (citing <u>Sobi v. Fairfield Resorts,
Inc.</u>, 846 So. 2d 1204, 1207-08 (Fla. Dist. Ct. App. 2003)).
Additionally, the complaint does not allege any behavior on
behalf of CB&T that was inconsistent with protecting its own
economic interest, and "[p]rotecting a company's own economic
interest to reduce the risk of incurring further loss does not
constitute intent to damage within the meaning of a cause of
action for intentional interference with business relationship."
<u>Networkip, LLC v. Spread Enters.</u>, 922 So. 2d 355, 358 (Fla. Dist.
Ct. App. 2006).  The complaint does not allege a claim of
tortious interference with business relationships that is
plausible on its face.

III. DEFAMATION OR LIBEL

The FDIC moves to dismiss the "disparagement of credit"
claim in Count III for failure to state a claim because Florida
law does not provide for a cause of action titled "disparagement
of credit," and to the extent that Count III alleges a cause of
action for defamation or libel, the complaint does not identify
what CB&T allegedly stated, to whom it made the statement, and
what was false about the statement.  (Def.'s Mem. at 11.)  The
plaintiffs oppose, arguing that regardless of how the claim they

allege in Count III is denominated, the United States Supreme Court and "Florida law generally recognize[] and provide[] for recovery of damages when another disparages or slanders any property or rights thereto." (Pl.'s Opp'n at 3.)

The cases cited by the plaintiffs - - <u>Bothmann v. Harrington</u>, 458 So. 2d 1163, 1168 (Fla. Dist. Ct. App. 1984), <u>Allington Towers Condo. North, Inc. v. Allington Towers North, Inc.</u>, 415 So. 2d 118, 119 (Fla. Dist. Ct. App. 1982), and <u>Atkinson v. Fundaro</u>, 400 So. 2d 1324, 1326 (Fla. Dist. Ct. App. 1981), pertain to a cause of action for slander of title to real property, a theory not supported by the facts alleged anywhere in the complaint. "A group of torts recognized under the collective title of 'injurious falsehood' are often interchangeably called slander of title, disparagement of property, or trade libel." <u>Salit v. Ruden</u>, 742 So. 2d 381, 386 (Fla. Dist. Ct. App. 1999) (citing <u>Sailboat Key, Inc. v. Gardner</u>, 378 So. 2d 47, 48 (Fla. Dist. Ct. App. 1979)). "The gist of the tort of injurious falsehood is the 'intentional interference with another's economic relations.'" <u>Salit</u>, 742 So. 2d at 386 (quoting <u>Procacci v. Zacco</u>, 402 So. 2d 425, 427 (Fla. Dist. Ct. App. 1981)). "The basis of a disparagement of property action arises out of an injurious falsehood or false statement concerning one's property." <u>Bothmann</u>, 458 So. 2d at 1168. While the plaintiffs argue that their credit reports constitute property, the

complaint and the plaintiffs' opposition simply do not specify or identify what statements CB&T made about the plaintiffs' credit reports, or about anything else for that matter, that were false.

Similarly, the complaint fails to state a cause of action for defamation. Under Florida law, "[t]he elements of [a] defamation claim are: (1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) the falsity of the statement caused injury to plaintiff." <u>Border Collie Rescue, Inc. v. Ryan</u>, 418 F. Supp. 2d 1330, 1348 (M.D. Fla. 2006). Nowhere in the complaint or in the opposition to the FDIC's motion to dismiss do the plaintiffs describe any false statement purportedly made by CB&T, or to whom such a statement was published. Instead, the complaint merely asserts legal labels unaccompanied by any facts sufficient to survive a motion to dismiss.

## IV. FRAUD

The FDIC moves to dismiss the claim of fraud in Count IV because the complaint does not allege any facts to support the purported fraud and lacks the specificity required by Rule 9(b), and because Florida's economic loss rule prohibits claims such as those asserted by the plaintiffs. The plaintiffs do not address this argument in their opposition to the motion to dismiss, and therefore have waived any opposition or have conceded the issue. <u>See</u> <u>CSX Transp., Inc. v. Commercial Union Ins., Co.</u>, 82 F.3d 478,

482-83 (D.C. Cir. 1986); <u>Bonaccorsy v. Dist. of Columbia.</u>, 685 F.
Supp. 2d 18, 24 (D.D.C. 2010); <u>Felter v. Salazar</u>, 679 F. Supp. 2d
1, 4 n.2 (D.D.C. 2010).

<u>CONCLUSION</u>

The complaint fails to state a cause of action for breach of
contract, tortious interference with business relations,
defamation or injurious falsehood, or fraud.  Therefore, the
FDIC's motion to dismiss will be granted.  An appropriate order
accompanies this memorandum opinion.

SIGNED this 23rd day of March, 2011.


                        _____/s/_____
                        RICHARD W. ROBERTS
                        United States District Judge